UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| VICTOR A. SACKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:05-CV-131 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| JONES PRINTING COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

## **M E M O R A N D U M**

Plaintiff Victor Sacks ("Plaintiff") brings this whistleblower lawsuit against his former employer, Defendant Jones Printing Company, Inc. ("Defendant" or "Jones Printing"), pursuant to Tennessee Code Annotated § 50-1-304. Before the Court is Defendant's motion for summary judgment, which is supported by a memorandum (Court File Nos. 10, 11). Plaintiff filed a response (Court File No. 12), to which Defendant has replied (Court File No. 15). In addition, Plaintiff filed a sur-reply (Court File No. 16).[1] Lastly, Defendant has requested the Court to strike Plaintiff's affidavit (Court File No. 15, pp. 4-6).

For the reasons set forth in this Memorandum, the Court will **GRANT** Defendant's motion for summary judgment and **DISMISS** Plaintiff's only claim against Defendant. However, the Court will **DENY** Defendant's request to strike Plaintiff's affidavit.

---

[1] In filing a sur-reply, Plaintiff ignored E.D. Tenn. L.R. 7.1(d) which provides "[n]o additional briefs . . . in opposition to a motion shall be filed without prior approval of the court . . . ." Regardless, the Court will consider Plaintiff's sur-reply because the Court considers it helpful in disposing of Defendant's motion for summary judgment and request to strike Plaintiff's affidavit.

**I.     STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Div., Horsemen's Benevolent & Prot. Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994). The Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Oakland Gin Co. v. Marlow*, 44 F.3d 426, 429 (6th Cir. 1995); *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 250 (6th Cir. 1994).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benevolent*, 20 F.3d at 1411; *see also Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper question for the jury, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

2

(1986); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benevolent*, 20 F.3d at 1411.

## II.     RELEVANT FACTS

Plaintiff worked for Defendant from July 1986 to August 6, 2004, mostly as a pressman (Court File No. 11, Exh. B, Court File No. 12, Exh. F, Court File No. 15, Exh. B, Court File No. 16, Exh. A, Deposition of Victor Sacks ("Sacks Dep.") pp. 47-49, 52-54; Court File No. 12, Exh. B, Affidavit of Victor Sacks ("Sacks Aff.") ¶¶ 2-3). A pressman operates a printing press. Operating a printing press involves loading paper into the press, putting ink and water into the press, and printing the job. Once the job is through, if the color is changed, the pressman must wash the press (Court File No. 11, Sacks Dep. p. 55). During his employment with Defendant, Plaintiff worked on several different presses of varying size (*Id.* at 47-49, 52-54; Sacks Aff. ¶ 2). Prior to August 2004, a printing press to which Plaintiff was assigned was sold or relocated on three separate occasions (Sacks Aff. ¶ 4).

Throughout Plaintiff's "tenure at Jones Printing, pressmen were instructed when changing out the fountain solution in the presses to dump the old fountain solution down the outside grate

3

behind the shop" (*Id.* ¶ 6; *see* Court File No. 12, Exh. C, Affidavit of Sam Rapp ("Rapp Aff.") ¶ 12; Court File No. 12, Exh. E, Affidavit of Mark Tow ("Tow Aff.) ¶¶ 8-9 ). The dumping would occur once a week (Sacks Aff. ¶ 6; Tow Aff. ¶ 9). Also, pressmen would dump "used coating" into the shop sink (Tow Aff. ¶ 9). Plaintiff saw Don Moates ("Moates"), the quality control manager at Jones Printing, pour "press room chemicals" down a storm drain (Court File No. 12, Sacks Dep. at 127, 174-77). It appeared to Plaintiff Moates was pouring an entire skid full of chemicals down the drain (*Id.* at 174-77). The fountain solutions used by Defendant included Emerald Fountain Solution, Starfount HT-180, Starfount Sf-72, Fountain Concentrate 3451U, and Green Diamond 251 RO Fountain Solution (Court File No. 12, Sacks Dep., Exh. 14). Plaintiff "had several arguments with [Moates] about the legality of disposing the old fountain solution" down the storm drain (Sacks Aff. ¶ 7).

At some point between 1989 and 1991 Plaintiff began to experience breathing problems (Court File No. 11, Sacks Dep. at 223). Plaintiff's breathing problems were caused by fumes from the roller washes used in cleaning the presses (Court File No. 11, Sacks. Dep. at 264). In 1989, Plaintiff asked Defendant to provide better ventilation (*Id.* at 112-14). Defendant has mechanical roof turbines which operate when the wind blows to provide ventilation (Court File No. 12, Sacks Dep. at 232-33). In more specific terms, Defendant utilizes a "vacuum system that moves 8,000 cubic feet [of air] per minute out of the building and returns [air] inside the building" (Court File No. 11, Exh. C, Deposition of Don Moates ("Moates Dep.") at 26). In January 2004, Plaintiff discussed Defendant's poor ventilation and his breathing problems with Moates (*Id.* at 114; Court File No. 12, Sacks Dep. at 232-34). Plaintiff also complained about the fumes to Russell Heffner, the shop union steward, and Wendell Burns ("Burns"), the president of Jones Printing (Court File No. 12, Sacks

4

Dep. at 121,123-25, 237).

In April 2004, Plaintiff was admitted to Memorial Hospital for "occupational lung disease" and "asthma" (Court File No. 12, Exh. I). A pulmonologist tested Defendant and diagnosed him with "mild obstructive ventilatory defect" (Court File No. 12, Exh. J). At some point in time Plaintiff told Moates he was having trouble breathing because of the poor ventilation and he "had a right, from OSHA, to have a safe work environment" (Court File No. 12, Sacks Dep. at 120). Moates responded, "You've got to die somehow" (*Id.* at 121).

Plaintiff told Moates he was going to report Defendant to the Occupational Safety and Health Administration ("OSHA") and Tennessee Occupational Safety and Health Administration ("TOSHA") (*Id.* at 140). However, Plaintiff decided he would try to contact Defendant's human resource department before he complained to OSHA or TOSHA (*Id.*). One week before Plaintiff's employment with Defendant was terminated, he asked Moates for the name and telephone number of the director of human resources (*Id.* at 140, 248). Moates told Plaintiff he could not talk to the human resources department unless he told him what he was going to talk to the human resources department about (*Id.* at 248). Plaintiff refused to tell Moates why he wanted to call the director of human resources (*Id.*). Moates relinquished and gave Plaintiff the phone number (*Id.* at 249).

About one week after Plaintiff told Moates he was going to call human resources, he was called into Burns' office and informed his employment was being terminated because the printing press to which he was assigned was being sold and moved (*Id.* at 250, 253-54). The parties agree a corporate team at Nationwide Graphics,[2] the company that manages Premier Graphics, Inc., which

---

[2] Nationwide Graphics and Premier Graphics, Inc. maintain their corporate offices in Houston, Texas (Court File No. 1, Notice of Removal, ¶ 5; Court File No. 11, Exh. A, Court File No. 15, Exh. C, Deposition of Wendell Burns ("Burns Dep.") p. 5).

is the company into which Jones Printing merged in 1997, made the decision to relocate the press on which Plaintiff worked (Court File No. 11, Exh. A, Court File No. 15, Exh. C, Deposition of Wendell Burns ("Burns Dep.") p. 43; Court File No. 15, Sacks Dep. at 257). According to Plaintiff, he was not offered another position (*Id.* at 253-54). However, Defendant asserts Plaintiff was offered a first-shift position on another press at the same pay but declined the position (*Id.* at 43, 48-49).

### III. DISCUSSION

#### A. Tennessee Public Protection Act

Tennessee law protects employee-whistleblowers in two ways. Under the common law, a cause of action for retaliatory discharge arises "when an at-will employee is discharged for refusing to remain silent about illegal activities." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn. 2002). "The plaintiff in such an action must demonstrate that the employer's violation was a '*substantial factor* in the employee's discharge.'" *Id.* (citing *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 555 (Tenn. 1988) (emphasis added by *Guy* court). Whistleblowing employees are also protected by the Tennessee Public Protection Act, which provides "[n]o employee shall be discharged or terminated solely for refusing to participate in, or refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(a). "Under the statute, the plaintiff must demonstrate an *exclusive causal relationship* between his whistleblowing activity and his subsequent discharge." *Guy*, 79 S.W.3d at 535 (emphasis added). That is, the plaintiff must show he was terminated solely because of his whistleblowing activity. *See Darnall v. A+ Home Care, Inc.,* 1999 WL 346225, at *5 (Tenn. Ct. App. June 2, 1999). Plaintiff has brought his claim under the

Tennessee Public Protection Act, not the common law (*See* Court File No. 1, Complaint).

The prima facie case of retaliatory discharge in violation of the Tennessee Public Protection Act consists of four elements:

> (1) The plaintiff's status as an employee of the defendant;
> (2) The plaintiff's refusal to participate in, or to remain silent about, illegal activities;
> (3) The employer's discharge of the employee; and
> (4) An exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

*Hill v. Perrigo of Tennessee*, 2001 WL 694479, at *3 (Tenn. Ct. App. June 21, 2001); *see also Griggs v. Coca-Cola Employees' Credit Union*, 909 F. Supp. 1059, 1063 (E.D. Tenn. 1995). Once a plaintiff has made out a prima facie case, "the burden shifts to the employer to advance a non-discriminatory reason for the termination." *Hill*, 2001 WL 694479, at *4. The burden then shifts back to the plaintiff "to show that his termination was solely for the reasons which he initially alleged." *Id.* "Courts have recognized 'that the plaintiff has indeed a formidable burden in establishing elements [] two and four of the cause of action.'" *Hill*, 2001 WL 694479, at *5 (quoting *Darnall,* 1999 WL 346225, at *5). Here, the issues are whether Plaintiff can prove elements two, three, and four.

### 1. Element Two

The Tennessee whistleblower statute does not require proof the employer instructed the employee to remain silent about an illegal activity. *Mason v. Seaton*, 942 S.W.2d 470, 476 (Tenn. 1997). Rather, a plaintiff need only show he refused to remain silent about an illegal activity—that is, he spoke out about an illegal activity. *Id.*

The evidence, viewed in the light most favorable to Plaintiff, indicates Plaintiff spoke out on several different occasions about the poor ventilation and dumping of chemicals. However, the

7

parties disagree about whether improper ventilation and/or dumping of chemicals constitute illegal activities. The Court will address the alleged improper ventilation and dumping of chemicals separately.

### (a) Ventilation

Defendant contends the alleged improper ventilation was not an illegal activity. The term "'illegal activities' means activities that are in violation of the criminal or civil code of this state or the United States *or any regulation* intended to protect the *public* health, safety or welfare." Tenn. Code Ann. § 50-1-304(c) (emphasis added). Apparently, Jones Printing does not have a "local" ventilation system (*See* Court File No. 11, pp. 5-6; Court File No. 12, p. 9; Court File No. 15, pp. 8-9).[3] Plaintiff claims Defendant's failure to provide a local ventilation system is an illegal activity because Defendant, under federal and state regulations, is required to provide a local ventilation system since it uses particular chemicals to clean its printing presses.

In support of his argument, Plaintiff points to two Material Safety Data Sheets ("MSDS(s)") which recommend local ventilation when either a (1) Tower Roller Wash product and (2) MRC Roll Clean product is used *and* specific hazardous components are at or above a certain level (Court File No. 12, Sacks Dep., Exh. 16). OSHA "requires that manufacturers and importers of hazardous substances supply information about the dangers associated with a particular product. 29 C.F.R. § 1910.1200. Specifically, manufacturers of products that contain more than .1% of a possible carcinogen must complete [an MSDS] and label their products accordingly." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1173 (6th Cir. 1995); *see* 29 C.F.R. § 1910.1200(g). "The role

---

[3] The parties do not explain what a "local" ventilation system is or how it differs from the ventilation system in place at Jones Printing.

8

of MSDSs under the rule is to provide detailed information on each hazardous chemical, including its potential hazardous effects . . . and recommendations for appropriate protective measures." 29 C.F.R. § 1910.1200, App. E. When an employer ignores a protective measure in an MSDS it is simply ignoring a manufacturer's recommendation. Thus, although Defendant did not install a local ventilation system in the area where the printing presses were located, it was not required by § 1910.1200 to install a local ventilation system. Defendant merely ignored a manufacturer's recommendation.

Further, even if Defendant's failure to install a local ventilation system could be construed as a violation of § 1910.1200, the intent of the applicable portions of that regulation are not "to protect the *public* health, safety or welfare." Tenn. Code Ann. § 50-1-304(c). Rather, the applicable portions of § 1910.1200 are designed to protect employees. Therefore, the whistleblower statute is not implicated by a violation of § 1910.1200. *See Guy*, 79 S.W.3d at 535 (remarking the Tennessee Public Protection Act "was enacted to protect employees from being discharged in retaliation for 'blowing the whistle' on infractions of rules, regulations, or the law pertaining to the health, safety, and general welfare of the public").

Next, Plaintiff avers the improper ventilation caused him to be overexposed to n-heptane, cumene, xylene, and trimethybenze in violation of Tenn. Comp. R. & Regs. § 0800-1-1-.07 (Court File No. 12, p. 9). Again, these regulations are not designed to protect the public at large. Instead, they are designed to provide employees with a safe work environment. Therefore, even if Defendant violated the above regulations, by its own terms the whistleblower statute would not apply. *See* Tenn. Code Ann. § 50-1-304(c). Further, there is simply no evidence Defendant exceeded the limits provided for by TOSHA, *see* Tenn. Comp. R. & Regs. § 0800-1-1-.07, Table Z-1-A. Although

9

Plaintiff and one other employee believed the chemical fumes were "strong," there has been no showing the employees were overexposed to any hazardous chemicals.

Lastly, Plaintiff contends "OSHA regulations require certain minimum ventilation standards" (Court File No. 12, p. 9 (citing 29 C.F.R. § 1910.94)). Any applicable ventilation standards found in 29 C.F.R. § 1910.94 were designed to provide employees, not the public at large, with a safe working environment. As already explained, even if Plaintiff violated any applicable ventilation standards in § 1910.94, the whistleblower statute would not apply. Nonetheless, if the whistleblower statute did apply, Plaintiff does not come close to meeting his burden of proof. He fails to explain which minimum standards were not met, whether Defendant is subject to § 1910.94, or how Defendant violated the minimum standards.

In sum, the Court believes Defendant's alleged improper ventilation system does not come within the ambit of the whistleblower statute and does not constitute an "illegal activity" as defined in § 50-1-304(c). Since Plaintiff has failed to prove one of the elements of his *prima facie* case, the Court will **DISMISS** Plaintiff's whistleblower claim insofar as it is based on improper ventilation.

**(b)    Dumping of Chemicals**

Before addressing whether Plaintiff's whistleblower claim can legally be based on the alleged dumping of chemicals, the Court must address whether the dumping of chemicals issue is properly before the Court. Plaintiff filed a complaint against Defendant averring he was "terminated for reporting unsafe work conditions in violation of [Tenn. Code Ann.] § 50-1-304" (Court File No. 1, Complaint, ¶ 13). The alleged facts listed in the complaint in support of his claim include the ventilation problems discussed above but not the dumping of any chemicals (*Id.* ¶¶ 6-12). The first time Plaintiff mentioned dumping of chemicals was during his deposition (*See, e.g.,* Court File No.

10

16, Sacks Dep. at 283). After Plaintiff was deposed, he did not move to amend his complaint to allege the dumping of chemicals as a basis for his claim. Yet, Plaintiff raised the chemical dumping issue in its response to Defendant's motion for summary judgment. As such, Defendant argues the dumping of chemicals is a "new claim" that should be barred because Plaintiff has not filed a motion to amend his complaint (Court File No. 15, p. 3). The Court disagrees. Plaintiff's "claim" has never changed. Plaintiff's claim was and still remains a claim for retaliatory discharge under the Tennessee Public Protection Act. Therefore, an amendment to the complaint is unnecessary.[4]

Since the Court believes the dumping of chemical facts may be considered by the Court, it will now address whether the second element of Plaintiff's *prima facie* case has been met. Plaintiff argues Defendant's unlawful discharge of hazardous chemicals down a storm drain constitutes an illegal activity as that term is defined in Tenn. Code Ann. § 50-1-304(c). Unlike the improper ventilation issue discussed before, statutes, not regulations, are at issue here. Thus, the public's interest, as opposed to just employees' interest, is implicated. Viewing the facts in the best light possible for Plaintiff, Defendant instructed and/or allowed several different printing solutions and coatings to be poured down a storm drain and/or shop sink. While there appears to be a dispute as to whether the printing solutions and coating contain hazardous chemicals, the Court is satisfied the second element of Plaintiff's *prima facie* case has been met.

Tennessee has a Safe Drinking Water Act, Tenn. Code Ann. § 68-221-701, *et seq.*, which

---

[4] Even if the dumping of chemicals could be construed as a new claim, the Court would treat Plaintiff's response brief as a motion to amend and the Court would allow such an amendment because Defendant had notice the dumping of chemicals was a basis for Plaintiff's whistleblower statute claim (*See* Court File No. 16, Sacks Dep. at 283).

11

prohibits "[t]he discharge by any person of sewage or any other waste or contaminant[5] at such proximity to the intake, well or spring serving a public water system in such a manner or quantity that it will or will likely endanger the health or safety of customers of the system . . ." Tenn. Code Ann. § 68-221-711(5). Tennessee also has a Water Quality Control Act, Tenn. Code Ann. § 69-3-101, *et seq.*, which makes "[t]he discharge of sewage, industrial wastes or other wastes into waters,[6] or a location from which it is likely that the discharged substance will move into waters" unlawful unless a permit allows such a discharge. Tenn. Code Ann. § 69-3-108(b)(6). Each of these Acts[7] were likely violated if Defendant caused printing solutions and coatings to be poured down a storm drain and/or the shop sink on a weekly basis. While Defendant may be able to prove the statutes were not actually violated, Defendant had "reasonable cause to believe a law, regulation, or rule February 24, 2006 ha[d] been violated . . . ." *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997).[8] Thus, with respect to the dumping of chemicals, Plaintiff has satisfied the second element of his *prima facie* case.

### 2. Element Three

---

[5] A contaminant is defined as "any physical, chemical, biological or radiological substance or matter in water." Tenn. Code Ann. § 68-221-703(6).

[6] Waters is defined as "any and all water, public or private, on or beneath the surface of the ground, that are contained within, flow through, or border upon Tennessee . . . ." Tenn. Code Ann. § 69-3-103(33).

[7] Defendant also contends the dumping of the chemicals violated Tenn. Code § 39-17-102 and 33 U.S.C. § 1311. Section 39-17-102 does not appear to apply to the current case. As for § 1311, Plaintiff has failed to explain how Defendant violated this rather complex statute. Therefore, the Court will not consider § 1311 in its analysis.

[8] Defendant argues rather persuasively in its reply brief Tenn. Code Ann. § 50-1-304(c) requires proof of activities which actually are in violation of a criminal or civil code. However, this Court will defer to the Tennessee Supreme Court's interpretation of the Tennessee Public Protection Act.

12

Element three is satisfied if Plaintiff can show he was discharged by Jones Printing. Plaintiff testified he was discharged. Although Defendant has presented conflicting evidence on this matter, there is a genuine issue of material fact with respect to this element making it improper for the Court to decide as a matter of law whether Plaintiff has satisfied element three of his *prima facie* case.

### 3. Element Four

Plaintiff attempts to establish a causal connection by arguing he was terminated about one week or possibly a few days after he told Moates he was planning to call human resources to complain of OSHA violations (*See* Sacks Aff. ¶ 12). While this may have helped Plaintiff establish a causal link between the ventilation issue and Plaintiff's termination, it does not provide a link between Plaintiff's complaints about the dumping of chemicals and his termination. There is no evidence Plaintiff told Moates he was going to human resources to complain about the dumping of chemicals. In fact, Defendant stated in his deposition testimony he would not tell Moates why he wanted to complain to human resources. Regardless, even if there was evidence Plaintiff threatened to complain to human resources about the chemical dumping one week before he was terminated, "proximity in time between the protected act and the discharge is not sufficient to establish a causal relationship." *Mason*, 942 S.W.2d at 473.

Plaintiff's admission he complained several times to Moates about the legality of the chemical dumping makes it hard for the Court to be satisfied a casual link exists between Plaintiff's termination and his complaints about the dumping of these chemicals. Although the time frame of his complaints are not clear, the Court is certain some of the complaints must have occurred well before Plaintiff was terminated. Yet, Plaintiff offers no evidence of his earlier complaints resulting in a threat to his employment relationship with Defendant.

13

Also, Plaintiff has not presented any evidence Burns, who actually informed Plaintiff of his termination, knew of Plaintiff's complaints to Moates about the chemical dumping or Plaintiff's threats to complain to the human resource department. In fact, Burns affirmatively stated when he sat down with Plaintiff, he had not spoken with Moates about Plaintiff's complaints or threats (Court File No. 15, Burns Dep. at 46). This is important because Burns was the only person authorized, if he had permission from the chief operating officer or human resources manager of Nationwide Graphics, to terminate Plaintiff (Burns Dep. at 8-9).

Lastly, a causal connection is lacking here because no one at Jones Printing made the decision to move or sell the press Plaintiff was working on. This decision was made by the corporate office of Nationwide Graphics. Further, Burns even objected to Nationwide Graphic's decision to have the press moved (*Id.* at 44). While Jones Printing may have had previous presses that were assigned to Plaintiff sold or moved without his termination, there appears to be no reason why the last move should not have resulted in Plaintiff's termination, particularly when Jones Printing's workforce had seen a thirty percent decline from 1996-2004 (Court File No. 15, Exh. D, Wanda Collins Affidavit, ¶ 7).

Although Plaintiff has offered some circumstantial evidence suggesting Defendant's decision to terminate his employment was motivated by his refusal to remain silent about the dumping of chemicals (*See* Court File No. 12, pp. 12-16), Plaintiff cannot demonstrate he was terminated *solely* for speaking out about the dumping of the chemicals. Because Plaintiff has not met an element of his *prima facie* case, the Court will **GRANT** Defendant's motion for summary judgment and **DISMISS** Plaintiff's Tennessee Public Protection Act claim.

**B.**     **Plaintiff's Affidavit**

Defendant requests the Court to strike Plaintiff's affidavit because it contradicts his deposition testimony and is an improper attempt to create issues of fact after Defendant filed its motion for summary judgment. Although there appear to be minor discrepancies between Plaintiff's affidavit and deposition testimony, and the affidavit addresses issues on which Plaintiff had already been deposed at length, the Court sees no reason to strike the affidavit. Accordingly, it will **DENY** Plaintiff's request to strike Plaintiff's affidavit (Court File No. 15).

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's motion for summary judgment as to Plaintiff's cause of action under the Tennessee Public Protection Act (Court File No. 10). However the Court will **DENY** Defendant's request to strike Plaintiff's affidavit (Court File No. 15). Further, since there are no remaining claims, the Court will **DIRECT** the Clerk to **CLOSE** this case.

An Order Shall Enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**